Patricia SEAMAN, Plaintiff–Appellant,

v.

ARVIDA REALTY SALES and ARSLP,
Defendants–Appellees.

No. 92–2171.

United States Court of Appeals,
Eleventh Circuit.

March 10, 1993.

James J. Cusack, Fowler, White, Gillen, Boggs, Villareal & Banker, Tampa, FL, William F. Kaspers, Fisher & Phillips, Keith B. Romich, Atlanta, GA, for defendants-appellees.

Before KRAVITCH, Circuit Judge, GODBOLD and OAKES [*], Senior Circuit Judges.

GODBOLD, Senior Circuit Judge:

Plaintiff Patricia Seaman sued her former employer, Arvida Realty Sales, Inc., alleging that she was employed as a real estate salesperson and pursuant to her employment contract was entitled to health insurance coverage and participation in a 401(k) pension plan [1] to which she and Arvida contributed. She alleged that she was notified that she and other salespersons would be terminated in order that Arvida could eliminate the cost of providing the health insurance coverage and the employer's contributions to the 401(k) plan, although the health insurance and 401(k) plans were continued in effect. She stated that she and other terminated employees were offered contracts as independent contractors, which did not provide for health insurance or 401(k) participation. She refused to sign the new contracts and was terminated. Arvida acknowledges that Seaman was terminated because she refused to accept the change in status from employee to independent contractor and the concomitant changes in benefits.

Seaman charged that Arvida's conduct violated ERISA, 29 U.S.C. §§ 1001–1461, and RICO, 18 U.S.C. §§ 1961–1968, and asserted state law claims as well. The district court agreed with Arvida that Seaman's entitlement to health insurance and to future participation in the pension plan were not vested or accrued benefits, there-

Frank Eugene Hamilton, III, Frank Hamilton & Associates, Tampa, FL, for plaintiff-appellant.

---

[*] Honorable James L. Oakes, Senior U.S. Circuit Judge for the Second Circuit, sitting by designation.

[1]. A 401(k) plan permits employees to defer income to a retirement plan and requires their employer to make contributions in matching amounts. The employees may also be permitted to make additional contributions. *See, e.g., Gluck v. Unisys Corp.,* 960 F.2d 1168, 1173 (3d Cir.1992).

fore elimination of these benefits was not prohibited by ERISA. The court, therefore, dismissed the ERISA claim on the ground that plaintiff's termination did not affect § 510 of ERISA.

■ The case was certified for appeal under F.R.Civ.P. 54(b). The parties do not dispute that before her termination Seaman was an employee entitled to participate in Arvida's benefits plan,[2] or that the health insurance and 401(k) plan are included in the phrase, "employee benefit plan," and thus are covered by ERISA. All agree that the health insurance coverage was not vested, nor was future participation in the 401(k) plan although contributions already made under that plan were vested. Section 510 of ERISA provides:

> It shall be unlawful for any person to discharge ... a participant or beneficiary for exercising any right to which he is entitled under the provision of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan....

29 U.S.C. § 1140 (1988).

Arvida relies on *Phillips v. Amoco Oil Co.*, 614 F.Supp. 694 (N.D.Ala.1985), *aff'd* 799 F.2d 1464 (11th Cir.1986), *cert. denied* 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987), as authority that § 510 does not extend to contingent non-vested benefits.[3] The court of appeals decision in *Phillips* states: "as we noted above, the employer may terminate previously offered contingent non-vested benefits." 799 F.2d at 1471. That statement does not, however, establish that § 510 is never applicable to non-vested benefits. *Phillips* involved a concern that was sold for reasons independent of terminating employee benefits and terminated its pension plan. Amoco sold its propane gas business not for the purpose of interfering with ERISA rights but rather because of legitimate business concerns that stemmed from regulations that limited the price that it could charge for liquid propane. 614 F.Supp. at 722–23. Some employees were terminated in the transaction, but this was "an incidental result of a legitimate business transaction which ERISA was not designed to regulate or prohibit." *Id.* The district court noted that the purpose of § 510 is to "prohibit ... adverse treatment of a particular employee which amounts to or threatens 'constructive discharge,' and which is carried out for the purpose of interfering with the employee's attainment of future benefits or punishing the employee for the exercise of protected rights." *Id.* at 721.

Other cases affirmatively state that an employer may not discharge employees to prevent them from taking advantage of benefits even if those benefits are not yet vested. *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 237 (4th Cir. 1991); *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869, 881 (9th Cir.1989), *cert. denied*, 498 U.S. 814, 111 S.Ct. 53, 112 L.Ed.2d 28 (1990); *Clark v. Resistoflex Co.*, 854 F.2d 762, 770 (5th Cir.1988); *Kross v. Western Elec. Co.*, 701 F.2d 1238, 1242–43 (7th Cir.1983); *West v. Butler*, 621 F.2d 240, 245 (6th Cir.1980).

■ We agree with the reasoning of the Fourth Circuit in *Conkwright* which held that Congress did not intend to leave employees unprotected once their rights were vested and that § 510 prohibits the employer from discharging an employee for the purpose of preventing the employee from receiving additional vested benefits. 933 F.2d at 238. The Fourth Circuit's conclusion is consistent with § 510's language,

---

**2.** Seaman's employment contract provided that she was entitled to:

> such benefits, health insurance and/or life insurance, as may from time to time be provided by Broker for and to its employees; provided that, nothing herein shall obligate Broker to obtain, maintain, or renew any such benefit, health insurance and/or life insurance.

**3.** Arvida also contends Seaman has not shown that she was deprived of or prevented from obtaining any plan benefit. This contention is refuted by the record. Seaman alleged that, as an employee, she was entitled to participate in Arvida's health benefits and 401(k) plans, and that her termination deprived her of those benefits. Complaint, ¶¶ 7–10. Because the district court dismissed her claim, we must accept Seaman's allegations as true. Moreover, Arvida has conceded that, while an employee, Seaman was entitled to participate in its health benefits and 401(k) plans, and that the plans continued to be in effect after her termination.

which protects "the attainment of any right to which such participant may become entitled." One may not conclude that as a matter of law employers will not fire employees to prevent the employees from obtaining future benefits; rather, whether an employer intends to interfere with the employee's right to future benefits is a factual inquiry to be answered on a case-by-case basis. The validity of a § 510 claim does not hinge upon whether the benefits involved are vested but upon the purpose of the discharge. A plaintiff must show that the employer had the specific intent to interfere with the employee's right to benefits. *Id.; Gavalik v. Continental Can Co.*, 812 F.2d 834, 851 (3rd Cir.) (en banc), *cert. denied,* 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987). This standard does not require the plaintiff to show that interference with ERISA rights was the sole reason for discharge but does require plaintiff to show more than the incidental loss of benefits as a result of a discharge. *Gavalik,* 812 F.2d at 851. Seaman alleged that Arvida terminated her because she would not give up the right to continued participation in the health plan and for the specific purpose of interfering with her rights under ERISA.[4]

The caselaw we have set out defuses Arvida's argument that § 510 protection will turn every discharge into a § 510 violation. Arvida cites numerous cases but none stands for the proposition that an employer may discharge employees for the purpose of removing them from a non-vested benefits plan. Instead, these cases concern an employer's right to terminate or amend a benefits plan. *See, e.g., McGann v. H & H Music Co.*, 946 F.2d 401, 407–08 (5th Cir.1991), *cert. denied,* — U.S. —, 113 S.Ct. 482, 121 L.Ed.2d 387 (1992) (holding that an employer may amend plan's

coverage of catastrophic illness after employee had contracted AIDS); *Blessitt v. Retirement Plan for Employees of Dixie Eng. Co.*, 848 F.2d 1164, 1179 (11th Cir. 1988) (en banc) (discussing distribution of plan assets upon termination of pension plan). *McGann* specifically distinguished cases holding that an employer may not terminate an employee to avoid paying offered benefits from the principle that an employer retains the right to amend the plan itself. *McGann,* 946 F.2d at 405 n. 7. Our holding that an employer may not terminate an employee for the purpose of avoiding payment of plan benefits should not be interpreted to restrict the employer's right to modify a plan.[5]

The combined effect of our holding today and cases such as *McGann* is an interpretation of ERISA that prohibits employers from discharging employees to avoid paying benefits but permits employers to reduce or terminate non-vested benefits simply by changing the terms of a plan. This result may appear anomalous, but an examination of ERISA and its legislative history reveals that it is the result intended by Congress. ERISA's legislative history recognizes employers' need for flexibility in the design of benefits plans. H.R.Rep. No. 533, 93d Cong., 2d Sess. (1974), *reprinted in* U.S.C.C.A.N. 4639, 4647. ERISA therefore does not require employers to provide a retirement plan at all, H.R. No. 807, 93d Cong., 2d Sess. (1974), *reprinted in* U.S.C.C.A.N. 4670, 4677, or, when an employer chooses to provide benefits, regulate the substantive content of welfare-benefit plans, *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 732, 105 S.Ct. 2380, 2385, 85 L.Ed.2d 728 (1985); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). On the other hand, ERISA provides that any participant or beneficiary may bring an action "to recover

---

**4.** In her appeal Seaman contends for the first time that, in addition to violating ERISA, her termination violated the terms of Arvida's benefits plan. This court generally will not consider legal issues or theories raised for the first time on appeal, *Lattimore v. Oman Constr.*, 868 F.2d 437, 439 (11th Cir.1989), but has discretion to do so if the issue raises a pure question of law and refusal to consider it would result in a miscarriage of justice, *id.* Because we conclude that her termination is actionable under § 510 of

ERISA, we do not consider her contention that the terms of Arvida's benefits plan were also violated.

**5.** Likewise, our holding is consistent with this court's recent decision in *Owens v. Storehouse, Inc.*, 984 F.2d 394 (11th Cir.1993), which held, like *McGann*, that § 510 of ERISA does not prohibit an employer from terminating previously offered benefits that are neither vested nor accrued. *Id.* at 400.

benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). This indicates that, once an employer decides to offer benefits, Congress intended for the employer to be bound by the terms of its plan. These two policies have led one court to declare that "there is a world of difference between administering a welfare plan in accordance with its terms and deciding what those terms are to be." *Musto v. American General Corp.*, 861 F.2d 897, 911 (6th Cir.1988), *cert. denied,* 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989).

■ Section 510 should therefore be interpreted both to protect employees' right to receive benefits according to the terms of the applicable plan and employers' right to modify the benefits they offer. By making it illegal for any person to "discharge, fine, suspend, expel, discipline or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan," § 510 prohibits employers from preventing an employee from taking advantage of a plan or from applying a plan in a discriminatory manner. *See West,* 621 F.2d at 245. It should not, however, be interpreted to prohibit an employer from changing the terms of a plan, even if the change affects some employees more than others. *Deeming v. American Standard, Inc.,* 905 F.2d 1124, 1127 (7th Cir. 1990); *Aronson v. Servus Rubber, Div. of Chromalloy,* 730 F.2d 12, 16 (1st Cir.), *cert. denied,* 469 U.S. 1017, 105 S.Ct. 431, 83 L.Ed.2d 357 (1984). To do so would effectively prevent employers from reacting to changed circumstances and would reduce the flexibility that Congress sought to protect.

If the employer decides to offer benefits, it must allow its employees to take advantage of the plan and must administer the plan in a nondiscriminatory fashion. But the employer can make the initial decision whether to offer any benefits and may even modify or terminate non-vested benefits at any time. Nevertheless, if Seaman's allegations are true Arvida has violated § 510. Arvida did not change the terms of its plan; rather, it threatened to terminate its salespeople unless they agreed to become independent contractors, performing the same job but ineligible to receive the benefits previously offered to them as employees and still offered to Arvida's remaining employees. It terminated plaintiff for declining to work without the benefits she previously enjoyed though offered to remaining employees. Plaintiff was, in the exact language of § 510, discharged "for exercising [a] right to which [she was] entitled under the provisions of an employee benefit plan." To excuse this action would prevent § 510 from fulfilling its congressionally intended purpose. That Arvida, by changing the terms of its plan, lawfully could have deprived its salespeople of these benefits does not allow it to offer benefits but prevent its salespeople from taking advantage of those benefits on pain of discharge.

■ Arvida also contends that 26 U.S.C. § 3508, which permits it to employ real estate brokers as independent contractors for tax purposes, authorizes it to terminate salespersons who are currently employees receiving benefits so that it can reclassify them as independent contractors without benefits. There is no indication in § 3508 that Congress intended to suspend the provisions of ERISA in order that employers like Arvida can "reclassify" their employees through termination in order to save the cost of benefits.

REVERSED and REMANDED.