Patricia SEAMAN, Plaintiff,

v.

**ARVIDA REALTY SALES, INC.,
a Florida corporation, et al.,
Defendants.**

**No. 89–999–CIV–T–17.**

United States District Court,
M.D. Florida,
Tampa Division.

Nov. 15, 1995.

Frank Eugene Hamilton, III, Frank Hamilton & Associates, P.A., Tampa, FL, for plaintiff.

John William Robinson, IV, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, FL, William F. Kaspers, Keith B. Romich, Fisher & Phillips, Atlanta, GA, James J. Cusack, Battaglia, Ross, Dicus & Wein, P.A., Tampa, FL, for defendants.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This cause is before the Court on Defendants' Motion for Summary Judgment, Memorandum in Support thereof (Docket Nos. 86 and 87), and response thereto (Docket No. 99). This case is here on remand from the Eleventh Circuit Court of Appeals.

### STANDARD OF REVIEW

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant*, 595 F.2d 994, 996–7 (5th Cir.1979), quoting *Gross v. Southern Railway Co.*, 414 F.2d 292 (5th Cir.1969). As the district court in *Coghlan v. H.J. Heinz Co.*, 851 F.Supp. 808 (N.D.Tex.1944), so summarized:

"Although a court must 'review the facts drawing all inferences most favorable to the party opposing the motion,' ... the nonmovant may not rest on mere allegations or denials in its pleadings; in short, 'the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial.' FED.R.CIV.P. 56(e). However, merely colorable evidence or evidence not significantly probative will not defeat a properly supported summary

judgment ... The existence of a mere scintilla of evidence will not suffice ..." (cites omitted) at 810–811.

The Supreme Court of the United States held, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986):

> "In our view the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. [477 U.S. at 332, 106 S.Ct. at 2552, 91 L.Ed.2d] at 273.

The Court also said, "Rule 56(e) therefore requires that nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Celotex Corp.*, [477 U.S. at 323, 106 S.Ct. at 2553, 91 L.Ed.2d] at 274.

### FACTS

The following is a summary of the relevant facts asserted by the Defendant's Motion for Summary Judgment and not controverted by Plaintiff's response.

1. Defendant, Arvida, is a developer of residential and commercial communities: It purchases tracts of undeveloped land on which it builds and sells properties and develops communities. The Court is using the singular "Defendant Arvida" to refer to all Defendant Arvida entities.

2. Plaintiff, Ms. Seaman, worked at the Defendant's Sarasota office.

3. Prior to 1989 all of the sales agents were employed as employees. Defendant paid all job-related expenses including the payroll taxes, licensing fees. More importantly, Defendant permitted them to participate in the company sponsored health insurance plans and 401(k) plan.

4. In 1989, Defendant decided to change all sales agents employed as employees to independent contractors. As independent contractors, the sales agents would be re-

sponsible for most of the job-related expenses, including the cost of benefits previously provided by Defendant.

Defendant argues that the eliminating benefits was not the reason for its decision to change its sales agents to independent contractors. Defendant asserts that it was concerned with its inability to compete with the other developers whose sales agents were independent contractors.

Plaintiff argues that the reason for the reclassification was to save the cost of benefits. As such, Plaintiff asserts that Defendant violated Section 510. Section 510 provides that an employer cannot [fire] a participant or beneficiary for exercising a right to which they are entitled to under an employee benefit plan. 29 U.S.C. 1140 (1995).

Plaintiff also asserts a claim under RICO, and two state causes of action.

### DISCUSSION
### Count I

#### I. Violation of Section 510 29 U.S.C. 1140 (E.R.I.S.A.)

 Defendant argues that the motivating factor for the conversion of its sales staff from employees to independent contractors was to increase revenue and to become competitive with the other real estate developers. Defendant alleges that preventing the sales agents from participating in Arvida's benefit plans was not a motivating factor in its decision to convert, although loss of benefits was an incidental result.

In addition, Defendant asserts that Arvida was one of the few real estate developers that employed its sales agents as employees. As such, Defendant argues it was operating at a significant disadvantage financially, losing about 500,000–800,000 in revenue at the Boca Raton office. Defendant argues that to increase its revenues, it had to attract high producing sales agents. It is Defendant's contention that the only way to do this was to offer a compensation package which mirrored the competition.

Furthermore, Defendant alleges that, after a great deal of study, it concluded that to change its sales agents from employees to

independent contractors was the way to achieve this goal. Defendant argues that this is conclusive evidence that saving benefit costs was not the motivating factor behind the conversion. Defendant argues summary judgment should be granted.

Finally, Defendant asserts that its offer to Seaman to stay on as a manager with full benefits, and her rejection, disproves her contention that Defendant wanted to deprive her of the opportunity to receive employee benefits.

Plaintiff opposes the Motion for Summary Judgment pertaining to Count I. Plaintiff argues that Defendant's motivation for the conversion of the sales staff from employees to independent contractors was to deprive the sales associates continued participation in Arvida's insurance programs and in the company-sponsored 401k plans. Plaintiff urges that in-house memoranda prove that benefit costs were the motivating factor.

Plaintiff asserts that competition was not the motivating factor for the conversion. Plaintiff argues that Arvida could have increased commission splits at any time. However, Defendant concedes that the reason why Arvida could not raise commissions in the past was because of the cost of running the business. Defendant also concedes that one way to increase commissions was to make changes related to employee benefits. Plaintiff asserts that this shows that the way to increase commissions was to cut the employee benefits package, and the focus was on finding a way to shift the cost from the Company to the employees.

In addition, Plaintiff argues that a higher percentage of commission would be an incentive to encourage production under the employer status, or as a quasi-independent contractor; under both, employees would still be entitled to receive benefits. Plaintiff asserts that changing to quasi-independent contractors was considered, but rejected, because the cost savings were not enough.

Furthermore, Plaintiff asserts that there is no showing that the conversion has attracted higher producers from outside.

Plaintiff also asserts that the offer to keep her on as a manager does not disprove the violation of Section 510. Plaintiff argues that according to the appeals decision *Seaman v. Arvida Realty Sales and ARSLP,* 985 F.2d 543 (11th Cir.1993), the termination of all sales associates in order to cut costs by depriving them of benefits is a violation of section 510. *Id.* at 547. This was a class wide violation. *Gavalik v. Continental Can Co.,* 812 F.2d 834, 857 (3rd Cir.1987). Plaintiff argues that once a class violation has been shown, individual discrimination applies. Plaintiff contends Arvida's offer does not disprove its intent.

Finally, Plaintiff asserts that Arvida felt that it was necessary to retain control of its sales associates. However, instead of choosing to change the status of their employees to quasi-independent contractors which would retain the most control, even though the sales associates would still be eligible for employee benefits, Arvida chose independent contractors, which gave it the least control over its sales associates. Plaintiff argues that this fact compels an inference that Defendant's motivating factor was primarily one of reducing the cost of employee benefits.

Plaintiff urges that since there are disputed issues of material fact, reasonable inferences must be drawn. Plaintiff contends the Court should deny summary judgment.

Section 510 of ERISA states:

"It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan...."

29 U.S.C. Sec. 1140 (1988).

On appeal, the Eleventh Circuit held that Seaman's termination was actionable under ERISA. *Seaman v. Arvida Realty Sales,* 985 F.2d 543, 547 (11th Cir.1993). It held that "... cases affirmatively state that an employer may not discharge employees to prevent them from taking advantage of benefits even if those benefits are not yet." *Id.* at 545. The court agreed with the reasoning in *Conkwright v. Westinghouse Elec. Corp.,* 933

F.2d 231 (4th Cir.1991) that "Congress did not intend to leave employees unprotected once their rights were vested and that [Section] 510 prohibits the employer from discharging an employee for the purpose of preventing the employee from receiving additional vested benefits." *Id.*

In addition, the court held that "whether an employer intends to interfere with the employee's right to future benefits is a factual inquiry to be answered on a case-by-case basis." *Id.* at 546.

Furthermore, the court held that the standard is not "... whether the benefits involved are vested, but upon the purpose of the discharge. A plaintiff must show that the employer had the specific intent to interfere with the employee's right to benefits." *Id.*

The court stated that the standard does not require the plaintiff to prove that the inference with benefits was the sole reason for the discharge; however, the plaintiff had to show more than an incidental loss of benefits as a result of the discharge. *Id.*

The court held that ERISA prohibits the employer from discharging employees to avoid paying benefits; however, it does not prohibit the employer from changing the terms of the plan. *Id.*

"... [Section] 510 prohibits employers from preventing an employee from taking advantage of a plan or from applying a plan in a discriminatory manner ... It should not, however, be interpreted to prohibit an employer from changing the terms of a plan, even if the change affects some employees more then others."

*Id.* at 547.

However, ERISA does provide that a beneficiary may bring an action, "to recover benefits due to him under the terms of his plan." *Id.*

The Eleventh Circuit concluded that if Plaintiff's allegations were true, then Defendant violated Section 510. *Id.*

The court stated:

Arvida did not change the terms of its plan; rather, it threatened to terminate its salespeople unless they agreed to become independent contractors, performing the same job but ineligible to receive the benefits previously offered to them as employees and still offered to Arvida's remaining employees. It terminated plaintiff for declining to work without the benefits she previously enjoyed, though offered to remaining employees. Plaintiff was, in exact language of [Section] 510, discharged 'for exercising [a] right to which [she was] entitled under the provisions of an employee benefit plan.' To excuse this action would prevent [Section] 510 from fulfilling its congressionally intended purpose. *Id.*

After reviewing the record, this Court concludes that there are disputed issues of material fact, and denies summary judgment as to Count I.

Defendant claims that the conversion was strictly based on its need to be competitive. However, inferences can be drawn from the record that Defendant's intent may have been to deny the Plaintiff and others of their benefits.

Hollister testified in his deposition that control of the sales staff was a factor in the decision to convert. Control meant dictating hours etc. (Hollister, 53/8–54/24; 86/13–87/2; 126/22–127/7; 192/24–193/11). However, Defendant chose to convert its sales staff to independent contractors, which gave Defendant the least control of the sales associates. As quasi-independent contractors, Defendant would have maintained better control over the sales associates. (Hollister 54/1–25). As quasi-independent contractors, the employees would only pick up the cost of withholding unemployment taxes and social security, but the employees would still be eligible for employee benefits. (Hollister 55/1–13).

As independent contractors, employees pay all the costs for their benefits, as well as job-related expenses. An inference can be drawn that the reason Defendant did not choose to convert its employees to quasi-independent contractors was to save costs by denying insurance benefits and participation in the 401k plan to the employees.

This Court agrees with the Plaintiff that the memorandums in 1988 focused on how much costs could be saved by shifting ex-

penses from the company to the employee. (Kinsey's memo of July 7 1987 and Plaintiff's exhibit A). These memorandums explain the difference between a quasi-independent contractor and an independent contractor. The memorandums also explain the annual cost savings in group insurance that Defendant could experience. The Court finds that the memorandums contain issues of material fact which could support the inference that denial of employee benefits was a motivating factor in Defendant's decision to convert its sales staff.

In addition, the record shows that Defendant was not successful in recruiting high producers from the outside, nor is any such effort documented. (Larson 110/9–112/11).

For the reasons stated above, this Court denies summary judgment as to Count I.

## Count II

### II. Violation of RICO
### 18 U.S.C. Sec. 1961

■ Defendant argues that Plaintiff's RICO Count cannot stand because Plaintiff fails to allege the predicates necessary to establish a claim under the statute. Defendant argues Plaintiff's deposition proves that there is no basis in law or fact to support claims of mail fraud and wire fraud:

> "Seaman: I'm not sure that I would use the word 'deceive', because they blatantly said they were going to do.
> Attorney: No one misled you at all. Is that correct?
> Seaman: No. Why do you think I sued? (Seaman [7/94] 100)

In addition, Defendant argues that Plaintiff's other allegation that she was coerced and threatened is misleading. The only "threat" was a letter from Defendant's attorney to Plaintiff's attorney, in which Defendant would give up its contractual right to reduce the amount of commissions, if Plaintiff would sign a release. (Seaman [7/94 101(4)–102(13) & Exh. 11)

Further, the only action that Plaintiff alleges was intended to coerce or compel her was the prodding of the Division Vice President and Division Sales Manager to convince Plaintiff to stay.

Plaintiff does not respond to the Motion for Summary Judgment on this count. Even so, this Court must still consider the facts in favor of the non-moving party.

Section 1961(1)(A) and (B) sets out a list of what constitutes racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 481–483, 105 S.Ct. 3275, 3277–78, 87 L.Ed.2d 346. Section (B) lists mail fraud (18 U.S.C. Sec. 1341) and wire fraud (18 U.S.C. Sec. 1343) as two of the numerous provisions considered to be racketeering activity. *Id.* at 483, 105 S.Ct. at 3278.

Section C of Section 1962 provides elements needed to state a claim: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* at 496, 105 S.Ct. at 3285.

■ The elements of mail fraud under 18 U.S.C. Sec. 1341 are: (1) participation in a scheme to defraud, and (2) use of the mails in furtherance of the scheme. *U.S. v. Parker*, 839 F.2d 1473, 1478 (11th Cir.1988). "In order to constitute a "scheme to defraud" the scheme must be shown to be reasonably calculated to deceive persons of ordinary prudence and comprehension." *U.S. v. Netterville*, 553 F.2d 903, 909 (5th Cir.1977).

■ The elements of wire fraud, 18 U.S.C. Sec. 1343, require a person to "engage in an interstate telephone conversation for the purpose of executing a fraudulent scheme." *U.S. v. Griffin*, 699 F.2d 1102, 1105–6 (11th Cir.1983). This section requires that a person transmitting interstate communication do so with the intent that the communication will help further the scheme. *U.S. v. Hammond*, 598 F.2d 1008, 1010 *reh. denied* 605 F.2d 862 (5th Cir.1979).

Both of these criminal activities include the element of fraud or an intent to deceive. In the present case, Plaintiff admitted that she was not deceived or misled as to the loss of her benefits. (Seaman pg. 100) This Court finds that there is no genuine issue of material fact and therefore grants summary judgment as to this Count II.

Count III

### III. Breach of Contract

As to Count III, Defendant argues that the breach of contract is no longer an issue, because Seaman was paid in full, including the 20% that was initially withheld.

Plaintiff did not respond to this Count her Motion in opposition.

This Court finds that this Count is moot, because Plaintiff was paid her commissions in full, including the 20% the Defendant withheld. This Court grants summary judgment as to Count III.

Count IV

### IV. Conversion—Fla.Stat. Sec. 772.101 Florida' Civil Anti–Theft statute

Defendant argues that Seaman's breach of contract action cannot form the basis of a civil theft or conversion action. *Futch v. Head*, 511 So.2d 314, 319–321 (Fla. 1st DCA 1987). Defendant states that when Plaintiff was asked whether anything was stolen from her, she responded "I don't believe so, no." (Seaman 112(11–13). Instead, Plaintiff claimed that the Defendants converted her commissions to their benefit, when Defendant retained 20% of the commission on properties which closed after her termination. (Seaman 112–114).

Plaintiff did not respond to this Count in her Motion in Opposition to summary judgment.

> Fla.Stat. 812.014 defines theft:
> "(1) A person commits theft if he knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
> (a) Deprive the other person of a right to the property or a benefit therefrom.
> (b) Appropriate the property to his own use or to the use of any person not entitled thereto ..."

Fla.Stat. Sec. 812.014.

After reviewing the record this Court finds that this issue is moot. Plaintiff admits that she was paid her commissions by the company. (Seaman 113–114) Accordingly, Defendant did not steal her commissions. This Court grants summary judgment to Defendant as to Count IV. Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment as to Count I (Docket No. 86) be **DENIED,** and Defendant's Motion for Summary Judgment as to Counts II, III, and IV be **GRANTED.**

**DONE AND ORDERED.**