**Cheryl CLELAND, Plaintiff,**

v.

**ARVIDA REALTY SALES, INC., a Florida corporation, et al., Defendants.**

**No. 93–644–CIV–T–17A.**

United States District Court, M.D. Florida, Tampa Division.

March 25, 1996.

---

Frank E. Hamilton, III, Frank Hamilton & Associates, P.A., Tampa, FL, for Cheryl Cleland.

John William Robinson, IV, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, FL, William F. Kaspers, Keith B. Romich, Fisher & Phillips, Atlanta, GA, for Arvida Realty Sales, ARSLP, Inc.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, Chief Judge.

This cause is before the Court on Defendants' Motion for Summary Judgment, Memorandum in Support (Docket Nos. 22 and 23), and Plaintiff's response (Docket No. 34).

### STANDARD OF REVIEW

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant*, 595 F.2d 994, 996–7 (5th Cir.1979), quoting *Gross v. Southern Railway Co.*, 414 F.2d 292 (5th Cir.1969). As the district court in *Coghlan v. H.J. Heinz Co.*, 851 F.Supp. 808 (N.D.Tex.1944), summarized:

> "Although a court must 'review the facts drawing all inference most favorable to the party opposing the motion,' ... the nonmovant may not rest on mere allegations or denials in its pleadings; in short, 'the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial.' Fed.R.Civ.P. 56(e). However, merely colorable evidence or evidence not significantly probative will not defeat a properly supported summary judgment ... The existence of a mere scintilla of evidence will not suffice ..."

(cites omitted) at 810–811.

The Supreme Court of the United States held, in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986):

> "In our view the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of

proof at trial." *Id.* [477 U.S. at 332, 106 S.Ct. at 2552, 91 L.Ed.2d] at 273.

The Court stated further, "Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Celotex Corp.,* [477 U.S. at 323, 106 S.Ct. at 2553, 91 L.Ed.2d] at p. 274.

### FACTS

Plaintiff was an employee of Defendant, Arvida, at the Longboat Key branch of Defendant's company. Plaintiff was employed in the capacity of sales associate. Defendant is a developer of residential and commercial communities. Defendant purchases tracts of undeveloped land on which Defendant builds and sells properties and develops communities. The Court is using the singular "Defendant" to refer to all Defendant Arvida entities. The issue in this case involves not only the termination of Plaintiff, but other Plaintiffs similarly situated in 1989 with Defendant.

Prior to 1989, all of Defendant's sales agents were employed as employees. Defendant paid all job-related expenses including the payroll taxes and licensing fees. More importantly, Defendant permitted them to participate in the company sponsored health insurance plans and 401(k) plan. In 1989, Defendant decided to change all sales agents employed as employees to independent contractors. As independent contractors, the sales agents would be responsible for most of the job-related expenses, including the cost of benefits previously provided by Defendant.

Defendant argues that elimination of benefits was not the reason for its decision to change its sales agents to independent contractors. Defendant asserts that it was concerned with its inability to compete with the other developers whose sales agents were independent contractors. Defendant further asserts that Plaintiff's claim is barred by the statute of limitations. Defendant's contentions are that at no time there was any violation of Section 510 29 U.S.C. 1140 (E.R.I.S.A.) (hereinafter "ERISA"). Section 510 provides that an "employer cannot [fire] a participant or beneficiary for exercising a right to which they are entitled to under an employee benefit plan." 29 U.S.C. § 1140 (1995)

Plaintiff argues that the reason for the conversion was to save the cost of benefits in violation of ERISA. As such, Plaintiff adopts and incorporates the Memorandum filed by Plaintiff, Patricia Seaman, in Case Number 89–999–CIV–T–17, insofar as it addresses the merits of the 510 claim. As to the issue of the statute of limitations, Plaintiff contends that there is a factual dispute as to when she, as well as the other employees, knew that they were to be converted from sales agents to independent contractors.

### DISCUSSION

Defendant argues that the motivating factor for the conversion of its sales staff from employees to independent contractors was to increase revenue and to become competitive with the other real estate developers. Defendant alleges that preventing the sales agents from participating in Arvida's benefit plans was not a motivating factor in its decision to convert, although the loss of the employees benefits was an incidental result.

Additionally, Defendant asserts that it was one of the few real estate developers that employed its sales agents as employees. As such, Defendant argues it was operating at a significant disadvantage financially. Defendant asserts that to increase revenues, it had to attract high producing sales agents. It is Defendant's assertion that the only way to do this was to offer a compensation package which mirrored the competition. Defendant alleges that, after a great deal of research, Defendant concluded that the way to achieve this goal was to change its sales agents from employees to independent contractors. Defendant argues that this is conclusive evidence that saving benefit costs was not the motivating factor behind the conversion. Defendant argues that summary judgment should be granted.

Plaintiff opposes the Motion for Summary Judgment. Plaintiff argues that Defendant's motivation for the conversion of the sales staff from employees to independent contrac-

tors was to deprive the sales associates continued participation in Defendant's insurance programs and in the company-sponsored 401(k) plans. Plaintiff, in conjunction with the other Plaintiff's so situated, urges that in-house memoranda prove that benefit costs were the motivating factor.

Plaintiff asserts that competition was not the motivating factor for the conversion. Plaintiff argues that Defendant could have increased commission splits at any time. However, Defendant concedes that the reason why Arvida could not raise commissions in the past was because of the cost of running the business. Defendant also concedes that one way to increases commissions was to initiate changes related to employee benefits. Plaintiff argues that this was a way to increase commissions by cutting employee benefits packages, and the goal was finding a way to shift costs from the Company to the employee sales agents. Plaintiff asserts that changing to quasi-independent contractor status was considered, but rejected, because the cost savings were not enough.

Furthermore, Plaintiff asserts that there is no showing that the conversion resulted in attracting higher producers from the outside.

Finally, Plaintiff asserts that Defendant felt that it was necessary to retain control of its sales associates. However, instead of choosing to change the status of their employees to quasi-independent contractor, where they would have the most control along with eligibility for employee benefits, Defendant chose independent contractors, which gave it the least control over its sales associates. Plaintiff argues that this fact shows an inference that Defendant's motivating factor was primarily one of reducing the cost of employee benefits.

Plaintiff urges that since there are disputed issues of material fact, reasonable inferences must be drawn. Plaintiff contends this Court should deny summary judgment.

Section 510 of ERISA states:

"It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan...."

29 U.S.C. Sec. 1140 (1988).

In a related case, the Court held that an employer may not discharge an employee to prevent them from taking advantage of a benefit, even if those benefits have not yet come into existence. *Seaman v. Arvida Realty Sales,* 985 F.2d 543 (11th Cir.1993). The court agreed with the reasoning in *Conkwright v. Westinghouse Elec. Corp.,* 933 F.2d 231 (4th Cir.1991) that "Congress did not intend to leave employees unprotected once their rights were vested and [Section 510] prohibits the employer from discharging an employee for the purpose of preventing the employee from receiving additional vested benefits." *Id.*

In addition, the court held that "whether an employer intends to interfere with the employee's right to future benefits is a factual inquiry to be answered on a case-by-case basis." *Id.* at 546.

Further, the court held that the standard is not "... whether the benefits involved are vested, but upon the purpose of the discharge. A plaintiff must show that the employer had the specific intent to interfere with the employee's right to benefits." *Id.*

The court stated that the standard does not necessitate the plaintiff to prove that interference with benefits was the sole reason for the discharge; however, the plaintiff had to show more than an incidental loss of benefits as a result of the discharge. *Id.*

The court held that ERISA prohibits an employer from discharging employees to avoid paying benefits; however, it does not prohibit the employer from changing the terms of the plan. *Id.*

"... [Section] 510 prohibits employers from preventing an employee from taking advantage of a plan or from applying a plan in a discriminatory manner ... It should not, however, be interpreted to prohibit an employer from changing the terms of a plan, even if the change affects some employees more than others."

ERISA does provide that a beneficiary may bring an action, "to recover benefits due to him under the terms of his plan." · *Id.* The Eleventh Circuit concluded that if Plaintiff's allegations were true, then Defendant violated Section 510. *Id.*

The Eleventh Circuit stated:

Arvida did not change the terms of its plan; rather, it threatened to terminate its salespeople unless they agreed to become independent contractors, performing the same job but ineligible to receive benefits previously offered to them as employees and still offered to Arvida's remaining employees. It terminated plaintiff for declining to work without the benefits she previously enjoyed, though offered to remaining employees. Plaintiff was, in exact language of [Section] 510, discharged 'for exercising [a] right *to* which [she was] entitled under the provisions of an employee benefit plan.' To excuse this action would prevent [Section] 510 from fulfilling its congressionally intended purpose. *Id.*

Defendant claims that the conversion was focused on its need to be competitive. However, an inference can be drawn from the record that Defendant's intent may have been to deny the Plaintiff and others of their benefits. As independent contractors, employees pay all costs for their benefits, as well as job-related expenses. An inference can be drawn that the reason Defendant did not choose to convert its employees to quasi-independent contractors, where they would have more control, was to save costs by denying insurance benefits and participation in the 401(k) plan to the employees.

This Court agrees with the Plaintiff that the memorandums in 1988 focused on how much costs could be saved by shifting expenses from the company to the employee. (Kinsey's memo of July 7 1987 and Plaintiff Seaman's exhibit A). The memorandums discuss and explain the difference between a quasi-independent contractor and an independent contractor. The memorandums also explain the annual cost savings in group insurance that Defendant could experience with the conversion. The Court finds that the memorandums contain issues of material fact which could support the inference that denial of employee benefits was a motivating factor in Defendant's decision to convert its sales staff.

In addition, the record shows that Defendant was not successful in recruiting high producers from the outside, nor is any effort documented. (Larson deposition 110/9–112/11)

■ As to the issue of the statute of limitations, Defendant asserts that it began to run on April 3, 1989, the day Defendant asserts that Plaintiff became aware of the conversion. Plaintiff filed this action on April 19, 1993. However, Plaintiff argues that there is a factual dispute as to when the employees actually "knew" that they were going to be terminated. (See Plaintiff's exhibit A) This memorandum is from another individual in the company and discusses that the issue as to the conversion was uncertain and that employees were still working toward retaining their employee status. After reviewing· the memorandum dated April 7, 1989, (exhibit A), the Court finds that there is a factual dispute regarding the date that Plaintiff knew of her future with the company.

After reviewing the record, this Court concludes that there are disputed issues of material fact, and denies summary judgment. Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment (Docket No. 22) be **DENIED.**

**DONE AND ORDERED.**