**Luella CROUCH, Plaintiff-Appellant,**

v.

**MO–KAN IRON WORKERS WELFARE FUND, Mo-Kan Iron Workers Pension Fund, International Association of Bridge, Structural and Ornamental Iron Workers Local Union No. 10, International Association of Bridge, Structural and Ornamental Iron Workers, Robert Pfister, and Allen Thompson, Defendants-Appellees.**

No. 82–1081.

United States Court of Appeals,
Tenth Circuit.

Aug. 3, 1984.

William A. Larson of Gehrt & Roberts, Topeka, Kan., for plaintiff-appellant.

Steve A.J. Bukaty of Blake & Uhlig, Kansas City, Kan., for defendants-appellees Intern. Ass'n of Bridge, Structural and Ornamental Iron Workers Local Union No. 10; Intern. Ass'n of Bridge, Structural and Ornamental Iron Workers, Robert Pfister, and Allen Thompson.

Albert J. Yonke, Kansas City, Mo. (Michael G. Newbold, of Yonke, Shackelford & Arnold, Kansas City, Mo., and George A. Groneman, Kansas City, Kan., with him on the brief), for defendants-appellees Mo-Kan Iron Workers Welfare Fund and Mo-Kan Iron Workers Pension Fund.

Before BARRETT, McKAY and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Plaintiff Luella Crouch appeals an order granting summary judgment to all defendants in an action she brought pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a). Crouch sought a declaration of entitlement to welfare and pension plan benefits, reinstatement to her secretarial position, and damages for constructive discharge and outrageous conduct. Defendants are her former employer, the International Association of Bridge, Structural and Ornamental Iron Workers Local Union No. 10 (local union), two officers of the local union, Robert Pfister and Allen Thompson, the International Association of Bridge, Structural and Ornamental Iron Workers (international union), the Mo-Kan Iron Workers Welfare Fund, and the Mo-Kan Iron Workers Pension Fund.

The district court granted summary judgment on plaintiff's claims for pension and welfare benefits and for damages for constructive discharge principally because it concluded that plaintiff was not entitled to coverage under the plans. The international union prevailed on summary judgment because it was not a party to the trust indentures creating the plans and because the local union was not the international's agent in dealing with plaintiff. The district court found that plaintiff's outrageous conduct claim failed to meet the requirements of Kansas law. We affirm in part and reverse in part.

I

A

Plaintiff worked as a secretary in the local union's office in Topeka, Kansas,

from 1966 until December 1978. Plaintiff was paid for working thirty hours per week until her last few days of employment, when her work week was reduced to eighteen hours. The local union never made any payments to the welfare fund or to the pension fund on her behalf. The local union officers, who were also trustees of the welfare and pension plans, apparently assumed that the payments were optional because the local union never expressly agreed to make those payments. The local union, however, made payments into both the pension fund and the welfare fund on behalf of the officers of the local union. It also made payments to the welfare fund on behalf of one secretary in the local's Kansas City office during the last few years of plaintiff's employment.

The Mo-Kan Iron Workers Welfare Fund was created effective January 1, 1963, and amended and restated in 1976 to meet ERISA requirements. The Mo-Kan Iron Workers Pension Fund was created effective July 1, 1970, and amended and restated in 1976 to meet ERISA requirements. Parties to the agreements are the Builders Association of Missouri and the local union. The welfare and pension plans contain virtually identical definitions and descriptions of persons covered. Both plans cover employees of members of the builders association, employees of other companies with whom the union had collective bargaining agreements, and employees of the union (and of the plans themselves) not covered by a negotiated collective bargaining agreement. The term "employer" is defined as including any member of the builders association "who is a party to, or otherwise bound by, a collective bargaining agreement with the Union requiring payments to the Trust Fund with respect to employees represented by the Union," Art. IV, § 2(a) (both plans), and "the Union as to the employees of the Union." *Id.* § 2(d) (both plans). "Employee" is defined as a person employed by an employer "for whom the employer is required to make contributions," *id.* § 3(a) (both plans), and "[a]ny employee of the Union," *id.* § 3(b) (both plans). The plans define a "participant" as

"any employee ... of an employer who is, or may become, eligible to receive any type of benefit from this Fund." Art. IV, § 12 (both plans). A "covered person" means an "employee for whom payments are made to the Fund as provided by a collective bargaining agreement or who comes within the definition of 'employee' as defined herein." Art. IV, § 14 (both plans). The portion of the agreements dealing with the transmittal of funds on behalf of the participants states that "each employer shall pay to the Fund for each employee defined herein the amount required by the collective bargaining agreement." Art. VIII, § 2 (welfare plan); Art. VII, § 2 (pension plan). The plans do not specifically require any minimum number of hours of employment to qualify as an employee, participant or covered person.

The record also contains a summary description of the welfare plan. That description, distributed in booklet form to the employees, obviously is geared to those employees covered by collective bargaining agreements. Thus, the summary plan description states that the collective bargaining agreement between the builders association and the local union "in effect at the time this booklet was printed, determine[s] the rate at which employers contribute to the Plan and the employees on whose behalf contributions are made." R. I, 98. Other portions of the summary plan description describe eligibility in terms of "hours of contributions," R. I, 100, or "employment for which contributions are paid," R. I, 101. The summary plan description does mention eligibility for welfare benefits, stating that the employee is eligible if he has "contributions for 1,000 or more hours of employment" during the prior twelve-month period. R. I, 134. The summary plan description nowhere identifies local union employees as persons entitled to contributions to the welfare plan. Further, none of the materials specifically state that contributions on behalf of employees of the local union covered by either or both plans must be the same as the amounts set out in collectively bargained

agreements, although the union apparently uses that rate when it transmits contributions. *See* Brief of Appellant Exh. "B."

To resolve the issues in this case we must also consider federal law,[1] because the trust and welfare plans require administration in compliance with the provisions of the Labor Management Relations Act of 1947, ERISA, and all applicable rules and regulations of the United States Department of Labor and the Internal Revenue Service. Art. III (both plans). Each plan also declares that

> "The Plan adopted by the Trustees shall be such as will qualify for approval by the U.S. Treasury Department, Internal Revenue Service and the Department of Labor, and as will continue as a qualified plan. The Trustees are authorized to make whatever applications are necessary with the said Internal Revenue Service and Department of Labor to receive and maintain approval of the plan."

Art. IX, § 8 (welfare plan); Art. VIII, § 8 (pension plan). Additionally, the plans provide that, "All questions pertaining to the validity, construction and administration shall be determined in accordance with the laws of the State of Missouri and with ERISA and regulations adopted pursuant thereto subsequent to the effective date of ERISA." Art. XIV, § 3 (welfare plan); Art. XIII, § 3 (pension plan).

### B

We first consider whether plaintiff is entitled to benefits under the welfare plan. The union did not promise plaintiff welfare plan benefits. The local union, which had primary responsibility for determining entitlement to coverage, construed the plan to exclude plaintiff. The fund managers denied coverage also, although based on their failure to receive contributions on her behalf. R. I, 137–141. The language of the plan can be read as covering all union employees, but we do not think that is a required reading. The plan is ambiguous with respect to the amounts to be paid in for union employees. The plan apparently contemplates a decision by the union to cover its employees by submitting payments on their behalf in some particular amount. The only document that can be considered an election by the union to make payments on behalf of its employees consists of the monthly submission sheets, and plaintiff was not included in any of them. Furthermore, welfare benefit plans are exempt from the participation, vesting, and funding requirements applicable to pension plans. *See* 29 U.S.C. §§ 1051(1), 1081(a)(1). Thus, the law permits a welfare plan to discriminate against particular employees. In light of this and the ambiguities in the plan, we must hold that the union and the plan managers' conclusion that plaintiff was not covered by the plan is not arbitrary, capricious, or contrary to the plan.

### C

Although the language of the welfare plan is almost identical to the language of the pension plan, we hold that plaintiff is entitled to benefits under the pension plan. Nothing in the portion of ERISA contained in the labor sections of the Code expressly exempts pension plans from the minimum participation, vesting, and funding requirements of ERISA. Rather, 29 U.S.C. § 1052(a) expressly sets forth minimum participation standards which have no exception applicable to persons in plaintiff's position. Furthermore, to qualify as a plan under which employers' contributions are tax deductible in the year paid, the income of the trust is not taxable, and participants are not taxed on the contributions made on their behalf, the plan must meet the more detailed requirements

---

1. The enforcement duties and responsibilities under ERISA are divided between the U.S. Department of Labor and the Internal Revenue Service. The applicable laws are set out in 29 U.S.C. §§ 1001–1144 and in the Internal Revenue Code §§ 401–415. The sections governing employee welfare benefit plans are in the sections administered by the Labor Department. *See* 29 U.S.C. § 1002(1).

set forth in the Internal Revenue Code.[2] *See* I.R.C. §§ 401–415. The participation and vesting rules require the inclusion of a person in plaintiff's position in the plan. *See* I.R.C. § 410(a); Treas.Reg. § 1.410(a)–1(a)(1). Union negotiated plans are excused from some of the participation, vesting, and other requirements if they are created pursuant to a collective bargaining agreement that resulted from good faith bargaining. I.R.C. §§ 401(i), 410(b)(3). But minimum requirements are also imposed upon multi-employer collectively bargained plans, *id.* § 413, including plans that cover union employees. Section 413(b)(8), which deals expressly with plans covering employees of a labor union, states that the pension plan will meet the requirements of the Code if the coverage of the union's own employees meets the anti-discrimination requirements of § 401(a)(4) (no discrimination in favor of officers and highly compensated employees) and § 410 (covers all employees over age 25 with at least one year of service working 1,000 or more hours per year). The Treasury Regulations promulgated under the section state this in the negative: "If employees of [the local union] ... are covered by the plan and are not treated as employees of an employer establishing and maintaining the plan under the provisions of this paragraph [i.e., meeting the anti-discrimination requirements], the plan fails to satisfy the qualification requirements of § 401(a)." Treas. Reg. § 1.413–1(i)(1). Treas.Reg. § 1.413–1(i)(3) Example (2), reads as follows:

"Assume the same facts as example (1) [that the union's own employees are covered in a multi-employer plan], except that plan A is amended to cover only one of the five employees of L [the union], none of whom is covered by any other plan. Assume further that, under plan A, L does not satisfy the minimum percentage coverage requirement of section 410(b)(1)(A) with respect to employees of L. Assume further that the compensation of the one L employee who is covered by the plan is such that he is highly compensated relative to the four employees of L not covered by the plan. Consequently, L does not satisfy the minimum coverage requirements of section 410(b)(1)(B), with respect to employees of L. Under the rules of subparagraph (1) of this paragraph, the employees of L cannot be treated as employees of an employer establishing and maintaining the A plan because such coverage requirements are not satisfied by L. Consequently, the A plan fails to satisfy the qualification requirements of section 401(a)."

Thus, if we agree with the district court that the union was free to exclude plaintiff from the pension plan but to include the union officers, as it did, the entire pension plan fails to meet the qualification requirements of ERISA.

Because the pension plan states that it is to be construed to meet the requirements of ERISA, and there are obvious and significant benefits to meeting those requirements, we conclude that we must construe the plan as including plaintiff as a participant.[3]

## II

Although the record contains evidence that plaintiff's claim for benefits un-

**2.** Treasury Regulations apply to the labor sections 29 C.F.R. § 2530.200a–2, and Labor Department regulations apply to the Internal Revenue Code sections. *Id.* at § 2530.200a–3. *See also id.* § 2530.200b–1 (defining 1,000 hour requirement).

**3.** Defendants argue that plaintiff is not entitled to plan coverage because there is no written agreement requiring the union to pay benefits on her behalf. *See* 29 U.S.C. § 186(c)(5)(B). If we accepted that argument it would invalidate the plan insofar as it extends coverage to any employee of the local union. *See Denver Metro-*

*politan Ass'n of Plumbing, Heating, Cooling Contractors v. Journeyman Plumbers & Gas Fitters Local No. 3 & Pipefitters Local No. 208,* 586 F.2d 1367, 1372–73 (10th Cir.1978). Further, if the terms of the trust agreement are not themselves sufficient to satisfy the requirement that the employer's obligation to pay be in writing, the Mo-Kan Iron Workers Fringe Benefit Program Monthly Remittance Report, *see* Brief of Appellant Ex. "B," which sets forth specifically the employer contribution due to the pension plan and makes the transmittal on behalf of the union employees, meets that requirement.

der the welfare plan was presented to the plan administrators, who denied coverage, the record does not show whether any trustees of the pension plan other than defendants Pfister and Thompson were aware of plaintiff's claim. The pension trust indenture contains broad exoneration provisions for trustees who rely on an employer's certifications with respect to eligible employees. *See* Art. VII, § 6. We do not determine the trustees' individual liability for their erroneous interpretation of the trust agreement. We hold only that the trial court erred in granting summary judgment, and we remand for a determination on this issue.

### III

■ Because the predicate for the court's summary judgment on the constructive discharge issue was that plaintiff was not entitled to benefits under either the welfare or pension plan, we must also remand that issue for reconsideration. The pertinent statute states:

"It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act, or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act. It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this Act or the Welfare and Pension Plans Disclosure Act. The provisions of section 1132 of this title shall be applicable in the enforcement of this section."

29 U.S.C. § 1140. That section contemplates that an employer may not discharge or punish an employee because the employ-

ee seeks benefits to which he or she is entitled under ERISA. It creates a claim for retaliatory action by the employer similar to that under the civil rights laws. *See Kross v. Western Electric Co.*, 701 F.2d 1238 (7th Cir.1983). If the union officers made working conditions intolerable for plaintiff because she claimed pension benefits to which she was entitled, relief under § 1140 is appropriate.

### IV

■ We agree with the district court's dismissal of the cause of action against the international union. Plaintiff claims that the international union is liable because the constitution of the international union gives it significant control over local unions. That control, however, extends only to matters in which the international has an interest. The instant welfare and pension plans were negotiated by the local union on behalf of itself and the members it represented; the international union is not a party to them. There is no evidence in the record that the local union or its officers were acting on behalf of the international with respect to their actions toward plaintiff. There is therefore no basis for a claim against the international union, and summary judgment in favor of the international union was proper. *See Shimman v. Frank*, 625 F.2d 80, 97–99 (6th Cir.1980).

### V

■ We also agree with the trial court that the facts of the instant case, as a matter of law, do not constitute the tort of outrageous conduct. *See Wiehe v. Kukal*, 225 Kan. 478, 592 P.2d 860 (1979).

----

The trial court judgment is affirmed except with respect to its holdings on the pension plan and the constructive discharge issues. As to those issues, we reverse and remand for further proceedings consistent herewith.