**Allan T. HEATH, Plaintiff–Appellant,**

v.

**VARITY CORPORATION, Defendant–Appellee.**

No. 95–2159.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 3, 1995.

Decided Nov. 30, 1995.

Lawrence M. Shindell (argued), Anne B. Shindell, Sally A. Piefer, Shindell & Shindell, Milwaukee, WI, for Plaintiff–Appellant.

James R. Scott, Charles P. Stevens (argued), Lindner & Marsack, Milwaukee, WI, for Defendant–Appellee.

Marc I. Machiz, Thomas S. Williamson, Jr., Karen L. Handorf, Susan M. Green, Department of Labor, Office of the Solicitor, Washington, DC, for Amicus Curiae.

Before EASTERBROOK, DIANE P. WOOD, and EVANS, Circuit Judges.

EASTERBROOK, Circuit Judge.

This appeal presents a single question: whether § 510 of the Employee Retirement Income Security Act (ERISA), 88 Stat. 895, 29 U.S.C. § 1140, applies to unvested benefits. Section 510 provides:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this title, section 3001, or the Welfare and Pension Plans

Disclosure Act, or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this title, or the Welfare and Pension Plans Disclosure Act....

Massey Ferguson Parts Company fired Allan T. Heath shortly before he was to become eligible for early retirement. (Varity Corporation has succeeded to Massey Ferguson's obligations, and AGCO Corporation to its operations; we use the original name.) The discharge did not affect Heath's pension, long vested under the terms of the employer's plan and ERISA itself. But it did prevent him from becoming eligible for additional benefits. Heath believes that Massey Ferguson acted "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan"—that is, the early retirement package. Heath also believes that his employer discriminated on account of age, in violation of the Age Discrimination in Employment Act. The district court granted summary judgment against Heath under ERISA but reserved the ADEA claim for trial. 869 F.Supp. 1379 (E.D.Wis.1994). Later the court entered a partial final judgment under Fed.R.Civ.P. 54(b), a permissible step because the ERISA claim is distinct from the ADEA claim on both factual and legal grounds. See *NAACP v. American Family Mutual Insurance Co.,* 978 F.2d 287, 291–93 (7th Cir.1992). The district judge concluded that even if Massey Ferguson fired Heath for the purpose of preventing him from becoming eligible for early retirement benefits, such a step would not violate § 510 because the employer could have abolished the entire early retirement plan. The greater power to abolish the plan entails the lesser power to deny benefits to particular persons, the court held. 869 F.Supp. at 1385–94, 1396–1401.

Under the district court's approach, § 510 protects only persons who lay claim to (or seek to qualify for) vested benefits, which ERISA prevents an employer from abolishing. This is a possibility that we have considered, and rejected, before. *Kross v. Western Electric Co.,* 701 F.2d 1238, 1241–43 (7th Cir.1983); see also *Teumer v. General Motors Corp.,* 34 F.3d 542, 544–45 (7th Cir. 1994). Accord, *Seaman v. Arvida Realty*

*Sales,* 985 F.2d 543 (11th Cir.1993); *Conkwright v. Westinghouse Electric Corp.,* 933 F.2d 231, 236–38 (4th Cir.1991); *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1110–11 (2d Cir.1988). *Kross* deals with life insurance and medical benefits, *Teumer* with benefits under a plan providing income to laid-off employees; nothing in § 510 justifies treating early retirement benefits differently.

The district court was aware of these cases but declined to follow them, explaining:

> This Court believes ... that the contradiction between the treatment of plan amendments and employee discharges under § 510, a contradiction which apparently was not argued or discussed before the 7th Circuit during its consideration of the issue, is the key to recognizing the error in extending § 510's protection to the unaccrued benefits of vested employees. Had this contradiction and corresponding analysis been brought to the 7th Circuit's attention, *Kross* may have been decided differently.

869 F.Supp. at 1387 n. 3. The district court's approach is not appropriate in a hierarchical judiciary. Although we willingly take account of new arguments, e.g., *United States v. Hill,* 48 F.3d 228 (7th Cir.1995), reassessment rarely leads to overruling. Few predictions of change in legal doctrine come true. To avoid heaping needless costs and delay on the litigants, a district court should apply existing precedents while explaining why it believes that innovation is in order. *Gacy v. Welborn,* 994 F.2d 305, 310 (7th Cir.1993). Courts of appeals that believe decisions of the Supreme Court to be mistaken are under identical marching orders. *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484, 109 S.Ct. 1917, 1921, 104 L.Ed.2d 526 (1989); *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.,* 460 U.S. 533, 535, 103 S.Ct. 1343, 1344, 75 L.Ed.2d 260 (1983); *Hutto v. Davis,* 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982). Today's case shows why. The district court erred in thinking *Kross* wrongly decided, this case has been sidetracked, and Heath has been put to substantial expense simply to receive the benefit of settled law.

Section 510 does not distinguish between vested and unvested benefits. It forbids adverse action "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan". "Plan" includes both pension and welfare plans; the former category includes some vested benefits, the latter does not. The district court conceded that the statute's most natural reading is the one *Kross* gave it, but it then conducted an extended tour of ERISA's legislative history. Such a journey is inappropriate. Unless an ambiguous term needs construction, a court should stop with the statutory language.

Interpretation is a contextual enterprise, and the principal context of § 510 is the remainder of ERISA. The district court thought that the statute as a whole contains a contradiction: why must an employer that is free to modify or abolish a plan ensure that each employee receives its full benefits? To resolve this supposed contradiction the district court limited § 510 to the sort of benefits that an employer cannot affect by changing or abrogating the plan. Yet a court should endeavor to apply all parts of a statute whenever possible. Tensions among statutory provisions are common. Legislation reflects compromise among competing interests. That employers won a battle and secured the right to modify plans, while employees prevailed in a different skirmish and secured the right to qualify for benefits under existing plans, shows no more than that each side could claim some victories. It upsets the legislative balance to push the outcome farther in either direction. Just as a court should not use § 510 and ERISA's other fiduciary obligations to curtail the employer's right to modify a plan, see *Johnson v. Georgia–Pacific Corp.*, 19 F.3d 1184 (7th Cir.1994), so a court should not use the employer's power to amend as a reason to curtail § 510. One need not treat ERISA as an interest-group bargain to see this. Flexibility in amending plans may encourage employers to make more generous promises, to the advantage of their workers. If firms were stuck with terms that in retrospect proved to be excessively costly, they would err initially on the side of omission. The mutual benefits of allowing employers to amend plans does not imply, however, that promises actually in place are illusory. Employers want to make credible promises of benefits, to attract and keep good workers; § 510 helps to make promises credible.

ERISA draws a line between an employer's right to modify or abolish a plan—which it may do without acting as a fiduciary for the workers—and the employer's duty to provide employees the benefits of existing plans. *Jos. Schlitz Brewing Co. v. Milwaukee Brewery Workers' Pension Plan*, 3 F.3d 994, 1001–03 (7th Cir.1993), affirmed, —— U.S. ——, 115 S.Ct. 981, 130 L.Ed.2d 932 (1995); *Teumer*, 34 F.3d at 544–45. See generally *Johnson*, 19 F.3d at 1188–90; Daniel R. Fischel & John H. Langbein, *ERISA's Fundamental Contradiction: The Exclusive Benefit Rule*, 55 U.Chi.L.Rev. 1105 (1988). Section 510 is only one manifestation of the fiduciary-duty side of the equation. In their role as managers or administrators of plans, employers must invest the plans' assets wisely and in the sole interest of beneficiaries, *Donovan v. Bierwirth*, 680 F.2d 263 (2d Cir. 1982), and must evaluate participants' claims for benefits impartially. They are subject to the fiduciary standards of trust law in performing these duties. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Section 510 completes the picture. See *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 143, 111 S.Ct. 478, 485, 112 L.Ed.2d 474 (1990). If the employer may not deny a claim out of hand, but must evaluate claims and pay according to the terms of the existing plan, then the employer also may not prevent the terms of the plan from being satisfied. Similarly, an agency holding the power to repeal a regulation or modify one of its decisions must apply its rule faithfully until it changes the law through approved forms. See *Atchison, Topeka & Santa Fe Ry. v. Wichita Board of Trade*, 412 U.S. 800, 807–08, 93 S.Ct. 2367, 2374–76, 37 L.Ed.2d 350 (1973).

No matter which end of the telescope one looks through, the picture is the same. Suppose the supervisor who fired Heath had purported to amend the plan to strip him of access to the early retirement package. Consider two possibilities: (i) the amend-

ment reads "The early retirement program is hereby abolished." or (ii) the amendment retains the program but adds "Notwithstanding the criteria ordinarily used to award early retirement benefits, Allan T. Heath is ineligible." The first possibility is open until the date Heath retires, but only if Massey Ferguson uses the amendment procedure laid out in the plan or proper under general corporate law. See *Curtiss–Wright Corp. v. Schoonejongen,* —— U.S. ——, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995), interpreting § 402(b)(3) of ERISA, 29 U.S.C. § 1102(b)(3). The decision to fire Heath did not follow the procedures appropriate to amending a plan, and it was not made by the persons authorized to change the plan. As for the second possibility: Massey Ferguson does not argue that a plan may exclude employees by name (and at all events the same procedural shortcomings would be present). The statutory distinction between an unbridled power to control the terms of the plan and the fiduciary duty to implement an existing plan in employees' interest supposes that the plan will contain rules of general applicability. We need not consider what would happen if the employee were a legitimate class of one (for example, the president of the firm). Cf. *Nixon v. Administrator of General Services,* 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977). Heath was a member of a group of employees with more than 20 years' service; the entire group had been grandfathered when Massey Ferguson curtailed the scope of its early retirement plan in 1988 to eliminate its "30 and out" option (the ability to retire, without regard to age, after 30 years of service). The 1988 amendment grouped Heath with other persons still eligible for "30 and out" benefits. When an employer's board of directors makes such a decision, ERISA does not allow supervisors to override it, one employee at a time.

Whether Heath's discharge was related to his impending thirtieth anniversary with the firm, or to his age, are questions we have not broached. They remain for decision in the district court. The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.