F I L E D
United States Court of Appeals
Tenth Circuit

DEC 9 1998

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

LISBETH L. GARRATT,

       Plaintiff-Appellant,

vs.

JOHN S. WALKER, doing business as
John S. Walker, DMD,

       Defendant-Appellee.

No. 96-1470

---

**ON REHEARING EN BANC**

---

Robert L. Liebross (Barry D. Roseman with him on the briefs), Denver, Colorado
for Plaintiff-Appellant.

Howard Bittman, Boulder, Colorado, for Defendant-Appellee.

---

Before **SEYMOUR**, Chief Judge, **PORFILIO**, **ANDERSON**, **TACHA**,
**BALDOCK**, **BRORBY**, **EBEL**, **KELLY**, **HENRY**, **BRISCOE**, **LUCERO** and
**MURPHY**, Circuit Judges.

---

**KELLY**, Circuit Judge.

     We granted rehearing en banc and address when an employer in a

Simplified Employee Pension (SEP) plan can condition another employee's

participation in the plan upon a reduction in salary without violating the anti-discrimination provision (§ 510) of ERISA, 29 U.S.C. § 1140?[1]  The panel opinion affirmed summary judgment in favor of Defendant-Appellee Dr. Walker (employer)[2] and against Plaintiff-Appellant Ms. Garratt (employee), holding that the employee could not show discrimination prior to an actual contribution.  See Garratt v. Walker, 121 F.3d 565, 570 (10th Cir. 1997).  According to the panel opinion and the district court, because any contribution that an employer might make on behalf of employees (including himself) was completely discretionary, a newly eligible employee could not claim interference with a present right to

---

[1]  That statute provides:

> It shall be unlawful for any person to discharge . . . or discriminate against a participant . . .  for exercising any right to which he is entitled under the provisions of an employee benefit plan [or] this subchapter . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan [or] this subchapter . . . .
> . . . .
> The provisions of section 1132 of this title [ERISA § 502] shall be applicable in the enforcement of this section.

29 U.S.C.A. § 1140.  Section 510 protects against two types of conduct: (1) adverse action for exercising any right under a plan or ERISA, and (2) interference with the attainment of any right under a plan or ERISA.  This protection is necessary to prevent the "circumvent[ion] of promised benefits." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 143 (1990).

[2]  Dr. Walker as a self-employed individual is both an employer and employee for SEP purposes.  See I.R.C. §§ 408(k)(7)(A); 401(c)(1)(A).  We refer to him as the employer given the claims in this case.

participate in the plan prior to an actual contribution.  Id.; Aplt. App. 278.  We vacate the panel opinion only on this issue and reverse and remand for a trial on the employee's discrimination and constructive discharge claims under § 510.

Background

In determining whether the evidence presents a genuine issue of material fact, we view it in the light most favorable to the party against whom summary judgment was entered, here the employee.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-52 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).  Wherever possible, we construe the plan as complying with all applicable requirements of ERISA and the Internal Revenue Code, particularly given the employer's assertion in his answer that the plan was to be so construed.  See Crouch v. Mo-Kan Iron Workers Welfare Fund, 740 F.2d 805, 809 (10th Cir. 1984).  Finally, we follow the panel's decision that a SEP is a pension plan within the meaning of ERISA.  See Garratt, 121 F.3d at 569.

Many of the operative facts involve salary discussions after the employer requested that the employee switch to a salary arrangement, in lieu of hourly wages.  In 1993, the employee earned ten dollars per hour, with annual compensation at $22,901.  In January 1994, the employer agreed to pay the employee $2,000 per month, but delayed a decision on the employee's request to

- 3 -

be included in the SEP plan. The employee requested whatever contribution percentage (based upon her salary) that the employer was making on his own behalf. Aplt. App. 41. Although it was suggested at oral argument that the employee was seeking an immediate contribution, the record does not bear that out, and such an inference would be contrary to the standard by which we evaluate the record.

It is undisputed that the employee was eligible to participate in the SEP plan and that the employee was earning $24,000 per year. See Aplee. Reh'g Br. at 4; Aplt. App. at 36. Some two or three weeks later, the employee rejected an offer to split responsibility for a fifteen percent contribution (based upon her salary) to the plan, with the employer and employee each paying one-half. See Aplt. App. at 48. Thereafter, the employee rejected an offer of the employer funding the entire fifteen percent contribution in exchange for reducing a coworker's hours. Id.

In March 1994, the employer gave the employee the following choice: a $21,000 salary with a fifteen percent contribution to the pension plan, or a $24,000 salary with no contribution. Aplt. App. 167. The $21,000 amount was below the employee's 1993 and 1994 compensation level and, according to the employee, the employer conceded that he was asking the employee to take a cut in pay and fund the plan. Id. at 51, 141. When she declined, the employer advised

- 4 -

that she should look for another job. She gave notice, but stayed on two weeks at the employer's request. The employer contends that managerial reasons supported his actions. See Aplt. App. at 29-30.

Ultimately, the employer contributed to the plan on his own behalf. Having done so, he also contributed on behalf of the employee, given the rules that require allocation of contributions among SEP participants uniformly based upon compensation, see I.R.C. § 408(k)(3)(C), (k)(5), and prohibit discrimination in favor of certain highly compensated employees, see I.R.C. § 408(k)(3)(A). The employer's contribution on his own behalf was consistent with his past practice; he contributed $30,000 to his own account in 1992 and 1993.

## Discussion

We asked the parties to brief whether the employer violated § 510 of ERISA in light of Inter-Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Ry., 117 S. Ct. 1513 (1997). In Inter-Modal, the Supreme Court rejected the view that, because an employer remains free to amend or eliminate a welfare plan, an employee has no present right to future benefits and cannot maintain a § 510 action for interference with those benefits. Id. at 1515. Although an employer may under some circumstances unilaterally amend or even eliminate its welfare plan, the Court held that otherwise it may not act with a purpose that

contravenes § 510. Id. at 1516. Although this case involves a type of pension plan, rather than a welfare plan, the district court's result in this case cannot be squared with Inter-Modal. Inter-Modal makes it clear that even though an employee may lack a present legal right to receive benefits in the future, an anticipated right to receive benefits may not be denied in a manner that would contravene § 510. That means that an employer may not condition a critical feature of plan participation, such as plan contributions, in a manner not authorized by the plan and proscribed by § 510.

The dissent acknowledges that § 510 applies to vesting pension plans, but contends that the principles in Inter-Modal can be applied only to the employee's participation in the plan, rather than entitlement to contributions because employer contributions are discretionary. In other words, the dissent contends that an employee's lack of a present right to a plan benefit, here a contribution, forecloses a § 510 action.

Inter-Modal rejected a distinction based upon vested and unvested rights and rejected an employer's discretionary power to amend or terminate a welfare plan as foreclosing a § 510 action. Unless the plan provides otherwise, an employee never has a present right to receive future benefits under a welfare plan (because the employer may amend or terminate the plan), yet the employee still may bring a § 510 action. Analogously, although the employee in this case lacked

a present right to a plan benefit, a contribution, she still is protected against unilateral changes designed to interfere with that right. Whether a welfare plan or a pension plan, an employer must operate within the terms of the plan, administer the plan in a non-discriminatory fashion and not informally amend the plan a participant at a time. See Inter-Modal, 117 S. Ct. at 1516.

The Supreme Court remanded Inter-Modal for consideration of the employers' argument that welfare plan eligibility was the only right protected under § 510. Id. at 1516. In so doing, it noted that the court of appeals' approach precluded consideration of such an argument, and it is doubtful that "any right" contained in § 502, or the terms "benefits," "rights," or "rights to future benefits," contained in ERISA's civil enforcement mechanism, 29 U.S.C. § 1132(a)(1)(B), can be read as limiting the anti-discrimination provision to plan eligibility only, any more than § 502's language could be restricted to vested rights. Moreover, such an approach is inconsistent with the rationale Inter-Modal and those cases with similar holdings. See Inter-Modal, 117 S. Ct. at 1515 n.*.

## A. Potential Rights under ERISA § 502 and § 510

The civil enforcement mechanism (§ 502) of ERISA, specifically 29 U.S.C. § 1132(a)(1)(B), allows a plan participant to bring a civil action not only for recovery of plan benefits and enforcement of plan rights, but also "to clarify his

rights to future benefits under the terms of the plan." Section 510 cross references section 502 and the Court has recognized the relationship between the two sections in safeguarding ERISA "rights and expectations." See Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 137 (1990); see also Humphreys v. Bellaire Corp., 966 F.2d 1037, 1043 (6th Cir. 1992). In discussing that relationship, the Fourth Circuit has explained:

> [Sections] 502 and 510 together protect the panopoly of rights at risk in the pension context: rights about to be earned but frustrated due to unlawful employer action, benefits earned but not paid, other rights due a participant but not fulfilled, and future benefits earned but not yet due.

Conkright v. Westinghouse Elec. Corp., 933 F.2d 231, 237 (4th Cir. 1991).

Although the panel opinion acknowledged that § 510 could extend to rights not yet earned, Garratt, 121 F.3d at 570, it declined to apply § 510 to the employer's conduct precisely because the employee lacked a present legal right to receive plan contributions in the future. The employee's right to such contributions was "thoroughly contingent on the employer's discretion and entirely within the employer's control." Id.

While there may be "a point where an employee's possible attainment of a 'right' is so speculative and contingent that it falls outside the bulwark of § 510," id., we do not think that point has been reached here. To be sure, an employer may decide not to contribute to a plan, but that discretion "does not include the

power to 'discharge . . . or discriminate against' the plan's participants and beneficiaries 'for the purpose of interfering with [their] attainment of . . . right[s] . . . under the plan.'" Inter-Modal, 117 S. Ct. at 1516 (quoting § 510). Section 510 prohibits an employer from discriminating against an employee because she may become entitled to a plan benefit, including an ad hoc change to the allocation formula for a particular employee to avoid the cost of the pension contribution.

### B. Future Entitlement to Contributions and ERISA § 510

The employer characterizes the dispute as about entitlement to, rather than eligibility for, a contribution. According to the employer, the conditions offered by the employer did not relate to plan eligibility or participation, but rather the terms under which the employee would become entitled to a contribution. Because contributions are not required and may be made after the tax year, the employer argues that the lack of entitlement to any contribution is dispositive of the § 510 issue.

This analysis is inconsistent with §§ 502 and 510 of ERISA which plainly allow an action based upon future entitlement to contributions. Moreover, the record clearly contains evidence that the employer conditioned an essential feature of plan participation on a salary reduction. A trier of fact could conclude

on the evidence that the employee's right to any future contributions depended upon her willingness to fund those contributions, notwithstanding the requirement that contributions be allocated among participants uniformly based upon compensation and pursuant to a written allocation formula clearly stating what requirements an employee must satisfy to share in an allocation. See I.R.C. § 408(k)(3)(C), (k)(5). ERISA also requires that benefit plans be in writing. See 29 U.S.C. § 1102(a)(1). This enables participants and beneficiaries to be aware of rights and obligations under a plan and those administering the plan to do so in conformity with existing plan requirements. See Curtis-Wright Corp. v. Schoonejongen, 115 S. Ct. 1223, 1230-31(1995).

An employer retains the right to make fundamental business decisions about employee compensation and whether (and how much) to contribute to a SEP plan. But there are limits on the use of a pension plan as a device to adjust employee compensation. First, the employer must act in concert with the written plan. See Teumer v. General Motors Corp., 34 F.3d 542, 548 (7th Cir. 1994) ("Benefit plans are themselves contracts between employee and employer."). Second, if a SEP employer contributes to the plan on his own behalf (thereby accepting the benefits of tax deferral), he must do so in the same manner for an eligible employee absent a valid salary reduction election. See I.R.C. § 408(k)(3)(C); (k)(6). The observation of the Eleventh Circuit is apt: "If the

employer decides to offer benefits, it must allow its employees to take advantage of the plan and must administer the plan in a nondiscriminatory fashion." Seaman v. Arvida Realty Sales, 985 F.2d 543, 547 (11th Cir. 1993) (constructive discharge claim under § 510 upon allegation that employer required employees to become independent contractors to eliminate cost of employee benefits). See also Gitlitz v. Compagnie Nationale Air France, 129 F.3d 554, 559 (11th Cir. 1997) (summary judgment not proper under § 510 where trier of fact could conclude that company reclassified employees as independent contractors for the purpose of interfering with future plan benefits).

Contrary to the dissent's view, a small business owner is still free to negotiate a compensation/benefit package with an employee. Requiring that he do so in conformity with the terms of his pension plan is no more onerous than requiring that he adhere to the terms of the plan, just as the employer did in this case when he ultimately contributed on behalf of the employee. After all, the employer created and benefitted from the plan, and should conform to its terms. An employee eligible for deferred compensation under a small business owner's plan is no less deserving of ERISA protection than an employee of the largest corporation.

Contrary to the district court's view, the problem is not about committing to a contribution in April 1994. See Aplt. App. at 277. Section 510 does not require

that an employee be entitled to a liquidated amount on a certain date; it plainly prohibits discrimination on account of potential entitlements. Here the employer had contributed to the plan in past years and a trier of fact could conclude that the options offered to the employee were for the purpose of interfering with likely and probable future contributions. Indeed, the employer made a contribution on behalf of the employee for tax year 1994, and not on the terms he now advances.

## C. Salary Reduction Plan

The employer also argues that the choice offered was permissible under a variant type of plan, a salary reduction SEP, which allows an employer to make the plan contribution by reducing the salary of an employee where fifty percent of the eligible employees so elect. See 26 U.S.C. § 408(k)(6)(A)(ii). No evidence, however, suggests any such election by all eligible employees, and a prototype pension plan document adopted by the employer in 1993 left all information about such a potential choice blank, and strongly implies that this is a regular SEP plan where the employer contributes. See Aplt. App. at 94-95, §§ 7, 8; 190 (plan document provided by employer was 1993 SEP adoption agreement); 272. It is uncontroverted that the employee opposed such a salary reduction and the eventual contribution made on behalf of the employee was not pursuant to such an

- 12 -

arrangement.

A unilateral oral decision to require a salary reduction would not satisfy the requirement of a written allocation formula. See I.R.C. § 408(k)(5). Nor is it consistent with other plan documentation, publication or amendment requirements. See 29 U.S.C. §§ 1022(b), 1024(b)(1), 1102(b)(3); 29 C.F.R. § 2520.104-49 (1997). Indeed, the imposition of requirements not contained in the plan has been held to be arbitrary and capricious. See Blau v. Del Monte, 748 F.2d 1348, 1354 (9th Cir. 1984). The employer's contributions on his own behalf were well in excess of the amount permitted under a salary reduction arrangement; in short, neither the law nor the facts suggest such an arrangement and we may neither imply one nor retroactively validate the employer's offer to his employee.

## D. Discrimination Under § 510

A variation on the above argument is the employer's contention that no discrimination occurred because he funded his contributions in the same manner as requested of the employee, specifically by contributing a portion of his earned income to the SEP. This contention is unavailing because the employer and employee were not similarly situated for this analysis. The employer was a sole proprietor entitled to all revenues less expenses from his practice, not a salaried

employee.  A salary reduction arrangement had not been elected, and the pension plan was in addition to the regular compensation of salaried employees, not in lieu of it.  Even if the employer and employee were regarded as similarly situated, the contention would be untenable because discrimination in this context is not limited to disparate treatment of similarly situated employees; it also extends to adverse employer action taken because an employee engages in protected activity, including exercising, or attempting to attain, any right under a plan or ERISA. See Mattei v. Mattei, 126 F.3d 794, 805-06 (6th Cir. 1997), cert. denied, 118 S. Ct. 1799 (1998).  Here, a trier of fact could find that a motivating factor behind the employer's terms was to discriminate in favor of himself and against the employee in order to save the cost of the employee's participation in the plan. Similarly, a trier of fact could find that a motivating factor behind the employer's terms was the employee's assertion of rights under the plan.

## E.  Power to Amend the Plan

The employer also reminds us that he had the power to amend the plan to require employees to fund their contributions.  As Inter-Modal makes clear in the welfare plan context, an employer's power to amend the plan does not render an employee's potential rights too illusory for § 510 protection.  Id., 117 S. Ct. at 1516.  The plan may be amended by following the formal procedures in the plan,

but the employer may not otherwise act for purposes prohibited by § 510.  Id.

"The formal amendment process would be undermined if § 510 did not apply

because employers could 'informally' amend their plans one participant at a

time."  Id.  The power to amend a plan consistent with limitations imposed by law

or by the plan should not be confused with the obligation to provide employees

with the benefits of the existing plan.  Cf. Heath v. Varity Corp., 71 F.3d 256,

258 (7th Cir. 1995) ("ERISA draws a line between an employer's right to modify

or abolish a [welfare] plan–which it may do without acting as a fiduciary for the

workers–and the employer's duty to provide employees the benefits of existing

plans.  Section 510 is only one manifestation of the fiduciary-duty side of the

equation." (citations omitted)).

## F.  Adverse Action and Proof

According to the employer, no adverse action occurred.  Section 510

proscribes changes in employment status based upon benefit motivations.  See

Teumer, 34 F.3d at 545.  If the employer required the employee to agree to a

reduced salary in order to receive a contribution, that constitutes adverse action.

It affects employment status and the employee otherwise would have been entitled

to receive the contribution.  Depending on the facts, the failure to accede to the

employer's condition could constitute a constructive discharge.  See Gitlitz, 129

- 15 -

F.3d at 559; Seaman, 985 F.2d at 546-47; Mitchell v. Mobil Oil Corp., 896 F.2d 463, 467-68 (10th Cir. 1990); West v. Butler, 621 F.2d 240, 245 (6th Cir. 1980). "To prove constructive discharge, the employee must show that her 'employer by [his] illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign.'" Burks v. Oklahoma Publ'g Co., 81 F.3d 975, 978 (10th Cir. 1996) (quoting Derr v. Gulf Oil Corp., 796 F.2d 340, 344 (10th Cir. 1986)).

An employee may rely upon direct or indirect proof that an adverse employment action "was motivated by an intent to interfere with employee benefits protected by ERISA." Phelps v. Field Real Estate Co., 991 F.2d 645, 649 (10th Cir. 1993); see also Maez v. Mountain States Tel. & Tel., Inc., 54 F.3d 1488, 1504 (10th Cir. 1995); Gavalik v. Continental Can Co., 812 F.2d 834, 851-53 (3rd Cir. 1987). The employee is not required to show that the employer's sole motivation was to interfere with employee benefits, she need only show that it was a motivating factor. See Shahid v. Ford Motor Co., 76 F.3d 1404, 1411 (6th Cir. 1996); Conkright, 933 F.2d at 238; Dister v. Continental Group, Inc., 859 F.2d 1108, 1111 (2d Cir. 1988); Gavalik, 812 F.2d at 851. We have reviewed the summary judgment record de novo; suffice it to say that plaintiff relies upon direct and indirect proof, see Greene v. Safeway Stores, Inc., 98 F.3d 554, 560 (10th Cir. 1996) (ADEA case), and a trial will be necessary.

- 16 -

REVERSED and REMANDED.

No. 96-1470, *GARRATT V. WALKER*

**BRORBY**, Circuit Judge, with whom **PORFILIO, ANDERSON**, and **TACHA**, Circuit Judges, join, dissenting.

The narrow issue before the en banc court is whether Dr. Walker violated § 510 of ERISA in light of *Inter-Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Ry.*, 520 U.S. 510, 117 S. Ct. 1513 (1997). I maintain the panel decision is not foreclosed by *Inter-Modal* as the majority suggests. I therefore respectfully dissent.

*Inter-Modal* held that § 510 applies to *non-vesting* employee *welfare plans* as well as to *vesting pension plans*. The Supreme Court based that holding on the fact the plain language of § 510 broadly refers to participation in a "plan," and makes no attempt to distinguish between rights that "vest" under ERISA and those that do not. By relying on the statutory language itself to answer a specific issue concerning employees' interests in non-vesting welfare benefits under formalized Railroad Retirement Act and Teamster benefit plans, the Supreme Court simply had no occasion to address whether § 510 offers any protection once an employee has attained the *right to participate* in an SEP, but can claim *no entitlement to a contribution* to the SEP, unless and until the employer, at his sole discretion, contributes to the SEP. *See Inter-Modal*, 520 U.S. at ___, 117 S. Ct. at 1516-17 (leaving to court of appeals on remand the issue whether § 510, "when applied to

benefits that do not 'vest,' only protects an employee's right to cross the 'threshold of eligibility' for welfare benefits"). The majority nevertheless extends the *Inter-Modal* holding to the unique facts of this case.

In my view, the non-vesting welfare benefits the Supreme Court deemed protected under § 510 in *Inter-Modal* are fundamentally different from an expectation in the mind of a single employee who requested an SEP contribution in conjunction with her request for a raise, and then, because she administered the payroll, implemented her own raise while the employer was still considering what percentage contribution, if any, to offer as part of the employee's overall compensation package. The simple, undisputed fact overlooked by the majority is that even as an eligible SEP participant, Ms. Garratt had no promise of nor right to a contribution until her employer actually made a contribution.[1] Dr. Walker's

---

[1] The majority seems to place great significance on the fact Dr. Walker had contributed to his SEP in the past and, in fact, contributed to both his and Ms. Garratt's SEPs after she left his employ. These facts are absolutely irrelevant to the issue of whether Ms. Garratt had a protected right when she filed suit against Dr. Walker. Dr. Walker's contribution history has relevance if and only if it is determined Ms. Garratt had a "right" to which she could claim entitlement under § 510. At that point such facts may be indicative of whether Dr. Walker had a motive or intent to discriminate. Because the decision whether to contribute to the SEPs for any given year was solely within Dr. Walker's discretion, prior or subsequent decisions cannot be used to create a "right" under § 510 where none otherwise exists.

final compensation package offer, which included a percentage SEP contribution, *if*, in fact, he made a contribution for that tax year, is not the same as the contribution itself, and therefore, did not create the type of anticipated "right" or "promised benefit" the Supreme Court found to be protected under § 510 in *Inter-Modal*.[2]  520 U.S. at ___, 117 S. Ct. at 1515, 1516.

By elevating an employer's compensation offer to the status of a "right" protected by § 510, the majority has created an onerous trap for the unwary small businessman.  An employer can no longer informally negotiate a compensation/benefit package involving a potential SEP contribution with an employee without subjecting himself to ERISA liability.  The language of § 510 does not require such a result; nor do I believe *Inter-Modal* mandates such a result.  Accordingly, I would affirm the district court.

---

[2] The majority quotes from *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 237 (4th Cir. 1991), to identify the "panoply" of rights protected under ERISA §§ 502 and 510.  Protected rights are those

> rights about to be earned but frustrated due to unlawful employer
> action, benefits earned but not paid, other rights due a participant but
> not fulfilled, and future benefits earned but not yet due.

For the reasons stated, even viewing the record in the light most favorable to  Ms. Garrett, she simply cannot identify any benefits due, earned or about to be earned.