**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 21, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JOHN M. DENHAM,

      Plaintiff-Appellant,

v.

SUNOCO, INC. (R&M),

      Defendant-Appellee.

No. 06-5040
(D.C. No. 01-CV-219-E)
(N.D. Okla.)

---

**ORDER AND JUDGMENT***

---

Before **O'BRIEN** and **BRORBY**, Circuit Judges, and **BROWN**,** District Judge.

---

Plaintiff-appellant John Denham appeals from the judgment of the

district court rejecting his claim that he was terminated from his job with

defendant-appellee Sunoco, Inc., in violation of common law and § 510 of

ERISA, 29 U.S.C. § 1140.  In arriving at its judgment, the district court

---

*     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**     The Honorable Wesley E. Brown, Senior District Judge, District of Kansas, sitting by designation.

concluded that Sunoco's reason for terminating Mr. Denham was both reasonable and believable. Aplt. App., Vol. I at 63. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

Sunoco at all relevant times owned and operated a lubricants refinery in Tulsa, Oklahoma. Mr. Denham had been employed by Sunoco since December 1976. On May 25, 2000, Mr. Denham began a medical leave of absence due to neck, left shoulder, and back ailments and began receiving short-term disability payments under Sunoco's disability income plan. As required by company policy, Mr. Denham periodically reported his medical condition to his supervisor and to Sunoco's company doctor at the Tulsa refinery, Dr. Campbell. Mr. Denham also gave consent for his medical records to be shared with Sunoco, which Sunoco later received.

During the time Mr. Denham was on disability leave, his supervisor, Mr. Manard, heard comments from other Sunoco employees indicating that Mr. Denham may have been engaging in physical activities apparently incompatible with his disabilities. In order to verify these rumors, Sunoco hired a private investigative agency to look into the matter. That agency hired Rex Merritt, a local investigator experienced in surveillance work, to follow Mr. Denham and videotape his activities.

Upon the completion of his surveillance, Mr. Merritt submitted a videotape to Sunoco's human resources (HR) department along with an affidavit identifying

the subject of the tape as Mr. Denham. On November 15, 2000, Mr. Denham met with Dr. Campbell who examined Mr. Denham and gave him a release to return to work. Shortly after the completion of his visit with Dr. Campbell, and while still on refinery property, Mr. Denham was summoned to Sunoco's HR department. There he met with several of Sunoco's management personnel, some of whom had already reviewed the videotape and Mr. Merritt's affidavit. The tape was shown again, this time to Mr. Denham, Dr. Campbell, and other HR personnel. After telling Dr. Campbell that the person in the videotape was Mr. Denham, Krista Turney, Sunoco's HR manager, asked Dr. Campbell whether "[w]ith the limitations and restrictions that we understood that [Mr. Denham] had, could he be doing those types of activities that we had reviewed." Aplt. App., Vol. II at 427. The doctor's opinion was that Mr. Denham could not be doing the activities caught on the video. *Id.* When Dr. Campbell was asked at trial whether Ms. Turney "elicited an opinion from you that if this was Mr. Denham on the tape, he could not be doing the kinds of things or should not be doing the kinds of things depicted there if he had limitations imposed as you understood them to be," *id.*, the doctor replied, "[m]y opinion was that he could not be doing those things as I saw on the video," *id.*

During the November 15, 2000, meeting, Mr. Denham admitted being the person in the early part of the video shown working on a black truck and making a trip to a local auto-supply store. He denied, however, being the person shown

-3-

later in the video unloading fifty-pound sacks. Ms. Turney told Mr. Denham that he would not be returning to work until the investigation into his disability claim was finalized. Aplt. App., Vol. I at 75. Mr. Denham was eventually discharged on January 10, 2001, after the Tulsa refinery personnel reviewed the matter with corporate officials in the company's Philadelphia headquarters.

In response to his discharge, Mr. Denham filed suit in Oklahoma state court alleging wrongful termination. Sunoco removed the action to federal district court, alleging, inter alia, that Mr. Denham's claims were preempted by ERISA. Mr. Denham then amended his complaint to include a claim under ERISA § 510, 29 U.S.C. § 1140, alleging that he was unlawfully terminated because he sought and obtained disability benefits from Sunoco's disability income plan.

Both parties filed motions for summary judgment which were denied, and trial proceeded to the court on August 2-5, 2004. In ruling for Sunoco, the district court made extensive findings of fact and concluded, for purposes of this appeal, that Sunoco's termination of Mr. Denham's employment was reasonable and that the reason given was believable. Mr. Denham's § 510 claim therefore failed because Mr. Denham had not established that Sunoco's proffered reason for terminating him was a pretext for illegal discrimination.

Although Mr. Denham identifies seven different propositions on appeal, his case essentially presents three grounds upon which he urges us to find error in the decision of the district court: (1) that he was denied ERISA's procedural and

substantive safeguards; (2) that, for a variety of reasons, Sunoco's proffered explanation for his termination was not reasonable and believable and thus was a pretext for discrimination; and (3) that his breach-of-contract claim was preempted by ERISA.

Mr. Denham argues that Sunoco's disability plan administrator, and not the Tulsa refinery HR personnel, should have conducted the inquiry into his disability status. He views this as evidence that he was denied ERISA's substantive and procedural safeguards. After de novo review of this legal question, we disagree. First, Mr. Denham points to no provision in the disability plan precluding the type of investigative effort engaged in by the Tulsa HR department, or to any provision in the plan or in the law reserving this type of discrete employment investigation and decision to the plan administrator. Second, Mr. Denham at all times received all the short-term and medium-term disability payments to which he was entitled during his employment with Sunoco. This action to enforce ERISA's § 510 anti-discrimination provision is the proper remedy for an allegedly discriminatory termination; Mr. Denham was not denied any procedural or substantive rights under ERISA. Mr. Denham's citation of general ERISA provisions declaring basic ERISA policy and providing rights and remedies for plan participants is irrelevant.

Mr. Denham's second issue is the crux of this appeal. Section 510 makes it "unlawful for any person to discharge . . . a participant or beneficiary for

exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. "[A]dverse employer action taken because an employee engages in protected activity [here the claiming of disability benefits], including exercising, or attempting to attain, any right under a plan or ERISA" constitutes illegal discrimination. *Garratt v. Walker*, 164 F.3d 1249, 1255 (10th Cir. 1998). In proving illegal discrimination, the employee may resort to direct or indirect evidence, but he must prove that the "adverse employment action was motivated by an intent to interfere with employee benefits protected by ERISA. The employee is not required to show that the employer's sole motivation was to interfere with employee benefits, [he] need only show that it was a motivating factor." *Id.* at 1256 (quotation and citations omitted).

In reviewing the evidence, the district court found that the investigator, Mr. Merritt, was able to identify Mr. Denham and capture him on the videotape, although it was not clear from the videotape whether it was actually Mr. Denham seen unloading the fifty-pound sacks. Mr. Merritt, however, provided Sunoco with an affidavit to accompany the videotape stating that, with the use of binoculars, he could identify Mr. Denham as the person moving the sacks. Sunoco personnel showed the videotape to Dr. Campbell and told him that the person in the tape was Mr. Denham. When he was asked whether a person with

Mr. Denham's disability could perform the activities depicted in the videotape, Dr. Campbell opined that such activity would be unlikely. Aplt. App., Vol. II at 427. Based on these facts, the district court concluded that Mr. Denham's termination was reasonable, and the reasons given to justify it were believable. Mr. Denham, therefore, failed to "demonstrate that the proffered reason for termination was pretextual." *Id.*, Vol. I at 63-64.

"When there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of [a defendant's] conduct, then what is reasonable is always a question to be determined by the trier of fact." *Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 891 (10th Cir. 2006) (quotation omitted). We review factual determinations for clear error, giving due deference to the trial judge's opportunity to evaluate witnesses' credibility. Fed. R. Civ. P. 52(a); *see also United States v. McIntyre*, 997 F.2d 687, 709 (10th Cir. 1993) (refusing to reexamine credibility of witnesses' testimony or decide between competing interpretations of testimony); *Zimmerman v. Sloss Equip., Inc.*, 72 F.3d 822, 825 (10th Cir. 1995) (noting that "[w]hen findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings").

In challenging the district court's decision, Mr. Denham argues that it was contradicted by the overwhelming weight of the evidence. Specifically, he points to objective evidence in the record of his disability; argues that the videotape

relied on by Sunoco was unreliable, untrustworthy, and inadmissible; contends that Dr. Campbell's oral opinion rendered at the November 15, 2000, meeting about Mr. Denham's ability to perform the tasks documented in the videotape was ambiguous; and chastises Sunoco for failing to review the medical record in its possession, to get Dr. Campbell's opinion in writing, or to question Dr. Campbell about possible fraud. While Mr. Denham may make some valid arguments, they are basically beside the point.

In *Kariotis v. Navistar International Transportation Corp.*, 131 F.3d 672, 674 (7th Cir. 1997), an employee sued her former employer for terminating her employment, allegedly in violation of ERISA, among other federal statutes. As in this case, the employee was suspected of fraudulently accepting disability benefits, and the employer hired a company to videotape her movements while on leave. Describing the investigation as leaving "something to be desired," *id.* at 675, and "hardly look[ing] world class," *id.* at 677, the Seventh Circuit nonetheless affirmed part of the district court's summary judgment in favor of the employer because, while the plaintiff offered several pertinent criticisms of the employer's evaluation process, she had failed to advance "facts tending to show that the employer's reasons for some negative job action are false, thereby implying (if not actually showing) that the real reason was illegal discrimination." *Id.* The court noted that, "arguing about the accuracy of the employer's assessment is a distraction, because the question is not whether the employer's

reasons for a decision are *right* but whether the employer's description of its reasons is *honest*." *Id.* (citation and quotation omitted). After noting that there were probably better ways of investigating an employee's suspected dishonesty than those resorted to by the employer, the court went on to note that, "[y]et this investigation was the reason given for the discharge, and a reason honestly described but poorly founded is not a pretext as that term is used in the law of discrimination." *Id.* (quotation omitted). The court concluded that "whatever curious process a company employs to reach its decisions is irrelevant so long as nothing in the record suggests that the process is discriminatory." *Id.* at 679.

This court cited *Kariotis* in *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301 (10th Cir. 1999), *implicitly overruled on other grounds as recognized by Boyler v. Cordant Techs., Inc.*, 316 F.3d 1137, 1140 (10th Cir. 2003), a case involving a charge of age discrimination in hiring. There we noted that "[t]he relevant inquiry is not whether [defendant's] proffered reasons were wise, fair or correct, but whether [defendant] honestly believed those reasons and acted in good faith upon those beliefs." *Bullington*, 186 F.3d at 1318. Similarly, in *Kendrick v. Penske Transportation Services, Inc.*, 220 F.3d 1220 (10th Cir. 2000), a § 1981 case challenging a job termination on the basis of race discrimination, this court explained that "a challenge of pretext requires us to look at the facts as they appear to the person making the decision to terminate plaintiff." *Id.* at 1231. *See also McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir.

1998) (finding that plaintiff failed to establish pretext where the defendant discharged plaintiff after conducting an investigation into a subordinate employee's allegations of sexual misconduct on the part of the plaintiff and believed the allegations to be true, even though plaintiff presented evidence to the district court that the allegations may have been false).

Here, Sunoco had before it (1) reports from other employees regarding Mr. Denham's activities while collecting short-term disability; (2) a videotape indisputably showing Mr. Denham working on his truck and doing errands with no apparent impairment in movement; (3) a signed affidavit from a private investigator identifying Mr. Denham as the person in the videotape lifting fifty-pound sacks; and (4) the opinion of the company doctor that a person with Mr. Denham's impairments could not be engaging in the activity depicted in the videotape.

Given these circumstances, we find no error in the district court's conclusion that Mr. Denham failed to prove pretext because Sunoco's reason for terminating him was both reasonable and believable. "We have repeatedly held that the relevant inquiry in such cases concerns the belief of the employer that the employee engaged in misconduct, not whether the actual facts, as shown by evidence extrinsic to the employer's assessment, may have been otherwise." *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1178 (10th Cir. 2005). "[D]istrict courts, when analyzing the pretext issue, do not sit as super-personnel

departments free to second-guess the business judgment of an employer."
*Bullington*, 186 F.3d at 1318 n.14.

Finally, Mr. Denham does not take issue with the district court's conclusion that his failure to follow the proper grievance procedure was grounds to dismiss his common-law contract claim for failure to exhaust administrative remedies. *See* Aplt. App., Vol. I at 61. Instead, Mr. Denham argues that his state-law claim for breach of employment contract is preempted by ERISA, which does not have an exhaustion requirement. Because we affirm the district court's conclusion that Mr. Denham has failed to sustain his ERISA-based claim of improper job termination, it will avail Mr. Denham nothing for us to determine that his common-law claim was preempted by ERISA. We therefore need not reach this issue.

The judgment of the district court is AFFIRMED.

Entered for the Court

Terrence L. O'Brien
Circuit Judge